IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -
HOUSTON DIVISION

| | |
|---|---|
| WANDA FEDERICK, ALICIA ORELLANA, AND SHARON POWELL, <br><br>Plaintiffs, <br><br>v. <br><br>EDUCATION AFFILIATES, INC. D/B/A FORTIS COLLEGE, <br><br>Defendant. | CIVIL ACTION NO. _____ <br><br><br><br>JURY TRIAL DEMANDED |

### PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

WANDA FEDERICK ("Federick"), ALICIA ORELLANA ("Orellana"), and SHARON POWELL ("Powell") (collectively, "Plaintiffs"), by and through her attorneys of record, hereby complains of EDUCATION AFFILIATES, INC. D/B/A FORTIS COLLEGE ("Fortis" or "Defendant"), and for causes of action against it, would show the Court as follows:

#### 1. INTRODUCTION

1.1. Federick alleges that she was discriminated against by Defendant because of her gender, female, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified as 42 U.S.C. §§ 2000e, *et seq.* Federick also alleges that she was discriminated against by Defendant because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), codified as 29 U.S.C. § 621, *et seq.* Further, Federick alleges that she retaliated against when she was terminated from her position of employment with Defendant for complaining of said disparate and discriminatory treatment, in violation of Title VII and the ADEA.

1.2. Orellana alleges that she was discriminated against by Defendant because of her gender, female, in violation of Title VII. Further, Orellana alleges that she retaliated against

1

when she was terminated from her position of employment with Defendant for complaining of said disparate and discriminatory treatment, in violation of Title VII.

1.3. Powell alleges that she was discriminated against by Defendant because of her gender, female, in violation of Title VII. Powell also alleges that she was sexually harassed in violation of Title VII. Further, Powell alleges that she retaliated against when she was terminated from her position of employment with Defendant for complaining of said disparate and discriminatory treatment, in violation of Title VII.

1.4. This action seeks equitable relief, actual damages, compensatory damages, general damages, consequential damages, liquidated damages, pecuniary damages, expert witness fees, court costs, attorney's fees, pre-judgment and post-judgment interest, and all other damages permit at law or in equity.

## 2. PARTIES & PERSONAL JURISDICTION

2.1. Plaintiff **FEDERICK** is a resident of Harris County, Texas, USA.

2.2. Plaintiff ORELLANA is a resident of Harris County, Texas, USA.

2.3. Plaintiff POWELL is a resident of Harris County, Texas, USA.

2.4. Defendant **FORTIS** is licensed to conduct business in the State of Texas for profit. Defendant may be served with process by and through its registered agent, Larry S. Perlman, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 1900, Miami, FL. 33131.

2.5. Defendant has sufficient minimum contacts with the State of Texas to confer personal jurisdiction upon it by this Court. Defendant conducts its business from its Harris County, Texas location as described in this lawsuit. Furthermore, Defendant recruited, contracted with, and employed Harris County, Texas residents, like Plaintiff, to conduct

its business throughout Texas. Finally, Harris County, Texas is where a substantial portion of the events or omissions giving rise to the claims in this action occurred.

## 3. VENUE & SUBJECT MATTER JURISDICTION

3.1. This Court has federal question subject matter jurisdiction. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.2. Specifically, the jurisdiction of this Court is invoked pursuant to Title VII and the ADEA.

3.3. Venue is proper in the Southern District of Texas, Houston Division because the unlawful employment practices were committed within the jurisdiction of this Court.

## 4. PROCEDURAL REQUESITES

4.1. All conditions precedent to the filing of this action have been met by Plaintiffs.

4.2. Plaintiffs timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("E.E.O.C.") on September 19, 2013. Plaintiffs each received their Notice of Right to Sue ("RTS").

4.3. This lawsuit has been filed within the required time period after the aforementioned RTS was issued to Plaintiffs by the E.E.O.C.

## 5. FACTS

5.1. Federick started her employment with Defendant at Defendant's South Campus location in December 2009. The position she held, up until she was wrongfully terminated, was Admissions Representative.

5.2. Defendant discriminated against Federick when she was not given the opportunity to apply for the position of Director of Admissions of Defendant's North Campus location. This position would have been considered a promotion, both in title and pay, for Federick.

5.3. Specifically, Federick disclosed her interest in the position to her supervisor, Powell. Powell asked for a copy of Federick's résumé and forwarded it to the Assistant Regional Director, Sidney Carey ("Carey"). Federick also personally spoke to the Regional Director of Admissions, Kim Galetti ("Galetti"), who knew of Federick's experience as a former Director of Admissions, Regional Director, and that she had a bachelor's degree. Galleti and Federick spoke on several occasions that if the position at the North Campus location became available, she would be considered.

5.4. The position became available at the North Campus location. However, Federick was never notified, nor was she given the opportunity to apply for the position.

5.5. It was to Federick's surprise when she learned that only one (1) interview was conducted for the position. The interview was done in secret, on a Saturday that Federick did not work. The position was awarded to someone outside of Fortis, Vanessa Smith.

5.6. Fortis failed to post the position of Director of Admissions of the North Campus location internally, as was expected.

5.7. As soon as Federick learned of the position, Federick asked Carey about it. Carey informed Federick that the position was not posted because management did not want the current Director to know her job was being interviewed for, and they did not want it to get out among the other campuses.

5.8. Powell informed Federick that she had given Federick's résumé to Carey. However, Federick was not given the opportunity to interview for the position.

5.9. When Federick approached Carey about the about the situation, he stated that he never knew Federick was interested in the position. This came as a shock to Federick. Carey hired Federick and was well aware that Federick wanted to advance within Fortis.

4

Further, Federick and Carey had discussed that given Federick's experience and education, with at least one (1) year of tenure at Fortis, it would definitely be possible.

5.10. Soon after the conversation with Carey, Federick approached Galetti about the same situation. Galetti had no explanation for Federick. Galetti simply apologized to Federick and stated that he "forgot" Federick had an interest in the position and about being promoted. Again, this shocked Federick, as she did not understand how Galleti forgot about her interest when he continuously made reference to Federick's qualified skills that were needed to perform the job. Further, as referenced above, Galleti told Federick on several occasions that if the Director of Admissions position at the North Campus location became available, Federick would certainly be considered and given the chance to apply. Moreover, Galetti held several private meetings with Federick to inform her of any openings among the various campuses.

5.11. Shortly thereafter, Carey began directing discriminatory comments about Federick to Powell. Carey made comments about Fedrick on a regular basis about Federick's age and health. Specifically, Carey would say that Federick was "old" and "sick", and routinely referred to Federick as that "old lady."

5.12. Federick is fifty-four (54) years of age and does have health issues, which were well known to Carey.

5.13. Despite Federick's health issues, Federick's attendance was better than most employees within the Admissions Department at Fortis, and any missed days were always scheduled off with approval.

5.14. Fortis continued their disparate and discriminatory treatment of Federick when she was passed over a second time for a promotion. On this occasion, an Assistant Director of Admissions position became available for the high school team.

5

5.15. This position, like the previously referenced position, was not posted internally, not discussed, nor acknowledged to give qualified persons, like Federick, the opportunity to apply.

5.16. A meeting was held one (1) afternoon with Carey and Powell, and the position was given to a male employee, John Hudson ("Hudson"). So for the second time, Federick was passed over and not given a chance to apply. Of significance, Hudson did not have a college degree at the time he was awarded the position.

5.17. When Federick asked Powell about the promotion awarded to Hudson, Powell stated that she did not know that meeting was going to take place, but noted it was solely Carey's decision. Specifically, Powell told Federick that Carey announced it, and immediately the department was informed that same afternoon.

5.18. Hudson openly talked about his promotion and raise that he had received.

5.19. When Carey heard Federick was considering going to EEOC, Carey made the conscious decision to get Federick out.

5.20. Carey terminated Federick on November 29, 2012. The alleged reason for the termination was that Federick violated the "conflict of interest" policy at Fortis.

5.21. Federick held a position in a company known as Premier Career Consulting ("Premier"). Plaintiffs started the company and each held an executive role. This company at issue was not in the same line of business as Fortis and in no way competed with Fortis. Furthermore, Federick did not spend any time on any outside company that interfered in any way with her work at Fortis. Premier was only on paper; no business was conducted due to not having any money to get it started. There simply was no conflict of interest whatsoever.

5.22. Powell openly volunteered to disclose Premier to Carey. The very next day he called Federick, Orellana, and Powell into his office to discuss the business.

5.23. During the meeting, Federick told Carey that she could prove that no monetary gains took place whatsoever. The expenses Plaintiffs incurred were split three (3) ways and was paid with their own money. That is sole reason why Plaintiffs could not conduct any business; there was no money.

5.24. Carey told Federick that he believed her because Federick was always at work. He then proceeded to give Federick pointers on what it took to actually start a business. Federick was never counseled prior to that meeting. Federick stated to Carey that if he thought it was a problem, she would dissolve the business immediately because she did not want to have any problems with her job at Fortis.

5.25. Carey used Premier as a primary reason to terminate Federick. In addition, he fired Orellana and Powell on the same day.

5.26. Federick was discriminated against because of her age and gender. It is clear that Carey had an intent to retaliate against Federick for her prior complaints. Carey's reasons for termination are pretext and the temporal proximity between Federick's complaints and Carey's retaliatory decision to terminate her employment provides ample evidence of retaliatory intent.

5.27. Orellana started her employment with Defendant at Defendant's South Campus location on January 8, 2006. The position she held, up until she was wrongfully terminated, was Admissions Representative.

5.28. Orellana was discriminated against when she was not given a promotion that was promised to her during her performance review in July 2012.

5.29. Specifically, Orellano was interested in the same position Federick was interested in, Assistant Director of Admissions. However, like Federick, Orellana was also passed over for the promotion. Further, Orellana received an email stating that no promotions would be given that year, for the year of 2012. However, it was to her surprise when Hudson was awarded a promotion, the position Orellana and Federick both had voiced their interest in.

5.30. Orellano was never promoted on paper nor with the monetary benefits as Hudson was rewarded.

5.31. Orellano often cried over the manner she was treated.

5.32. Shortly after Orellana was denied the promotion, Carey terminated Orellana on November 29, 2012. The alleged reason for the termination was that she violated the "conflict of interest" policy at Fortis. Orellana held an executive role in Premier. This company at issue was not in the same line of business as Fortis and in no manner competed with Fortis. Further, Orellana did not spend any time on any outside company that interfered in any way with her work at Fortis. There simply was no conflict of interest whatsoever.

5.33. Orellana was discriminated against because of her gender. It is clear that Carey had an intent to retaliate against Orellana for her prior complaints. Carey's reasons for termination are pretext and the temporal proximity between Orellana's complaints and Carey's retaliatory decision to terminate her employment provides ample evidence of retaliatory intent.

5.34. Powell started her employment with Defendant at Defendant's South Campus location in May 2011 as the Senior Director of Admissions. On or about July 2011, Powell was

given the additional title as Campus Director Designee. Powell held these titles up until she was wrongfully terminated.

5.35. Soon after Powell began her position at Fortis, Carey would make inappropriate comments, some of sexual nature, in her presence. In addition, Carey often called Powell "work wife," and would make comments about her appearance.

5.36. On November 12, 2011, Powell filed sexual harassment charges against Carey. The claims were investigated and substantiated by Human Resources. Carey thereafter made it known that he had every intention of retaliating against Powell for her complaints of sexual harassment.

5.37. Powell was discriminated and retaliated against when Carey terminated her on November 29, 2012 for allegedly violating Fortis' "conflict of interest" policy.

5.38. Specifically, Powell had launched two (2) businesses outside of Fortis, Premier and Tri-Wisdom, Inc. ("Tri-Wisdom"). Powell held an executive role in Premier and Tri-Wisdom. These businesses, in no manner, competed with Fortis. Moreover, these businesses did not take away any of Powell's time or attention from her position at Fortis. None of the companies at issue were in the same line of business as Fortis and in no manner, competed with Fortis. Said again, there was no conflict of interest whatsoever.

5.39. Of most significance, is that Carey had knowledge that Hudson, the new Assistant Director of Admissions, also held an executive role in Tri-Wisdom.

5.40. While Powell was immediately terminated, no action, however, was taken against Hudson, who was found to have engaged in the exact same type activity, outside business with Powell, as well.

5.41. Powell was discriminated against because of her gender and for her former complaint of sexual harassment against Carey. It is clear that Carey had an intent to retaliate against

9

Powell for her prior complaints. Carey's reasons for termination are pretext and the temporal proximity between Powell's complaints and Carey's retaliatory decision to terminate her employment provides ample evidence of retaliatory intent.

5.42. In direct contravention of its own policies and federal law, Fortis, through its agents, took adverse employment actions against Plaintiffs for their complaints of disparate and discriminatory treatment. Such actions constitute retaliation under Title VII and the ADEA.

5.43. It is obvious that Plaintiffs were terminated as a direct result for their complaints of Carey's disparate and discriminatory treatment of them. There was absolutely no legitimate business reason for the termination.

## 6. CAUSE OF ACTION: TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

6.1. Plaintiffs incorporate by reference and re-allege each of the allegations in the foregoing paragraphs of this Complaint.

6.2. Fortis, acting by and through its agents and employees, has intentionally engaged in gender discrimination and retaliation made unlawful by Title VII.

6.3. Title VII prohibits discrimination against individuals on the basis of a protected class, including gender.

6.4. Plaintiffs allege that Fortis discriminated against them because of their gender, female, in violation of Title VII.

6.5. Plaintiffs also allege that Fortis retaliated against them because of their gender, female, in violation of Title VII.

6.6. As a direct and proximate result of Fortis' unlawful gender discrimination and retaliation, Plaintiffs have suffered and continue to suffer lost earnings and benefits, emotional pain,

suffering, professional and personal embarrassment, humiliation, lost of enjoyment of life, and inconvenience.

## 7. SECOND CAUSE OF ACTION: AGE DISCRIMINATION IN EMPLOYMENT ACT

7.1   Plaintiff Federick incorporates by reference and re-alleges each of the allegations in the foregoing paragraphs of this Complaint.

7.2   Fortis, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful under the ADEA.

7.3   Fortis, acting by and through its agents and employees, have maintained a policy of age discrimination in violation of the ADEA against Federick.

## 8. DAMAGES

8.1.   As a result of Defendant's intentional, discriminatory, and unconstitutional acts described above, Plaintiffs have suffered and continue to suffer mental anguish, humiliation, and emotional distress, all to their detriment and compensable at law.

8.2.   Plaintiffs sue for actual and compensatory damages in an amount in excess of the minimal jurisdictional limits of this Court.

## 9. EXEMPLARY DAMAGES

9.1   Defendant's actions were harsh, oppressive, and malicious, and as a further and proximate cause, Plaintiffs have suffered serious emotional distress. The wrong done by Defendant was aggravated by the kind of willfulness, wantonness, and malice for which the law allows the imposition of exemplary damages. Plaintiffs, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## 10. ATTORNEYS' FEES

10.1. Defendant's actions and conduct as described herein, and the resulting damages and loss to Plaintiff, has necessitated Plaintiff retaining the services of SHELLIST LAZARZ SLOBIN LLP, 11 Greenway Plaza, Suite 1515, Houston, Texas 77046, in initiating this proceeding. Plaintiffs seek recovery of reasonable and necessary attorneys' fees.

## 11. JURY DEMAND

11.1. Plaintiff demands a JURY TRIAL in this case as to any and all issues triable to a jury.

## 12. PRAYER

12.1. WHEREFORE, Plaintiff respectfully prays that Defendant be summoned to appear and answer, and that on final hearing of this cause, Plaintiff have the following relief:

12.1.1. Judgment against Defendant for actual damages sustained by Plaintiffs as alleged herein;

12.1.2. Grant Plaintiff general damages for the damages to Plaintiff caused by Defendant's violations alleged in this Complaint;

12.1.3. Pre-judgment interest at the highest legal rate;

12.1.4. Post-judgment interest at the highest legal rate until paid;

12.1.5. Back-pay;

12.1.6. Front-pay;

12.1.7. Damages for mental pain and mental anguish in the past and future;

12.1.8. Liquidated damages;

12.1.9. Exemplary damages;

12.1.10. Attorneys' fees;

12.1.11. All costs of court expended herein;

12.1.12. Such other and further relief, at law or in equity, general or special to which Plaintiffs may show they are justly entitled.

Respectfully submitted,

By: */s/ Mark G. Lazarz*
MARK G. LAZARZ
TBA NO. 12069100
SHELLIST | LAZARZ | SLOBIN
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
mlazarz@eeoc.net
Telephone: (713)621.2277
Facsimile:  (713)621.0993

**ATTORNEYS FOR PLAINTIFFS**

OF COUNSEL:

SHELLIST | LAZARZ| SLOBIN LLP